Morning our first case today is number 24-1908 Roshana Ransom against Great Plains Finance. Mr. Smith. Good morning your honors may it please the court Rob Roy Smith with Kilpatrick on behalf of Great Plains Finance LLC with me is my colleague Mark Reeves and I would like to reserve three minutes for rebuttal. Great thank you your honor. Great Plains challenges the district court's application of the breakthrough management standard to the facts. You don't you think the breakthrough standard is the correct standard to apply why? I do your honor it's for a couple of reasons. One no circuit court to have considered breakthrough has rejected it. The fourth, seventh, and ninth circuits have all followed the tenth circuit's lead and applied breakthrough as have two state supreme courts the supreme courts of Connecticut and California and I think the reason for that is that breakthrough provides a qualitative and holistic framework for reviewing whether a tribal business entity is entitled to immunity. So there are factors it's not a test per se and it's not numerical counting it's it's a holistic approach. That is that is correct. It's it's uh subjective and holistic and evaluative not rigid and numerical. It is all those things your honor and not one factor weighs more heavily than than any of the others. And it's possible one factor could be so predominant that even if the other four go the other way that one factor could carry the day. Conceivably yes your honor. But it's open to us even if we adopt that test to decide how to apply it. We could apply it stringently. We could require that most of the factors weigh that way etc. You don't have to apply it as a 50-50. Are these facts all of equal importance or are there a few we should really care most about? Well your honor that's a that's a great question. So the way breakthrough has been applied more recently for example is sort of to consider that sixth factor that looks at the purposes of tribal sovereign immunity as really overlapping and informing the prior five right. So already courts seem to be moving away from a six-factor test to a five-factor test. And I think since it's a question of first impression for this court you can look to your jurisprudence on arm of the state immunity to help inform your decision making on arm of the tribe immunity right. I know Judge Vivas you were on a panel a couple of years ago in the Patterson case that dealt with arm of the state immunity. And there right this court has looked at the creation of the entity right whether it was created as a matter of state law so here tribal law the autonomy that the entity exercises from the from the state or from the tribe. And then sort of who bears the responsibility for it for the judgment. So I think those seem to be the key factors. That is one of the really important facts in arm of the state. And here the tribe is not on the hook. This is a separate entity. It's not going to hit the tribe's fist. Isn't that a hugely important strike against your argument? No because it does directly impact the tribe's finances. Any profits that Great Plains earns goes to the tribal government. So can that factor be determined without some record of what actually goes to the tribe from this enterprise? It can your honor because the way other courts have interpreted breakthrough is not by looking at the exact amount of profits that might have any amount. The record doesn't doesn't appear to show any amount. It talks about 20 percent but 20 percent of what? Right so so the record does not reflect an exact amount of profits. So should the district court have made a determination as to which what profits flowed? No because what matters under breakthrough is the entitlement to profits. So any and all profits that Great Plains realizes are provided to the tribe through the tribe's economic development entity IMDG. And other circuits have rejected. That's theoretical. I think what Judge Fisher is getting at if I if I read him right is that we're looking we're interested in the actual revenues not the theoretical revenues. And we don't really have any insight into that here. Right well the actual the actual profits with all due respect don't matter for determining arm of the tribe immunity. And that's because you can look at what the fourth circuit said if there's any profits flowing from there doesn't have to be there doesn't have to be your honor. So if the whole thing's a shell game you're just as entitled to tribal immunity as if it's meaningful and there are a steady stream of profits that actually flow to the tribe. No no not at all your honor. And that's not what I'm saying. So when you when you look at some of the cases that have that have considered breakthrough and looked at arm of the tribe immunity right. You have the internet lending cases from California. The court there looked at those tribal entities and said these are actually a financial detriment to the tribe. But still found that those entities met the second factor of Great Plains. I mean a second factor of a breakthrough for supporting immunity. Similarly we cite in our briefs to the Eastern District of Virginia case applied sciences from 2020 where the court was reviewing a tribal entity that had yet to distribute any profits to the tribe and still found that the second factor favored immunity for those tribal entities. Because Great Plains purpose is to support economic development and opportunities for the tribal government and its members. Let's grant the purpose. I think what is motivating the questions for my colleagues and maybe I can't speak for them is there's there's private equity lurking in the background here. They took control they dropped control. They structured the agreement. The agreement is such the amount of fees going to them appears to be so much that no money has yet reached the tribe. Your friends on the other side I think their overarching argument and theme is this is a rent-a-tribe arrangement right. So why shouldn't we apply factors three and five. Even if factor two and one are met and let's grant spot you one or two. Three and five in such a way to say look private equity they're lurking in the background here. They're using and abusing this. Shouldn't that be an impermissible level of structuring control involvement siphoning off even if all residual profits if there eventually are some go to the tribe. Well I take issue with with my friend's use of the phrase rent-a-tribe. It is paternalistic at best and suggests that the tribe is unable to operate this business without some some third-party involvement. With respect to the lending facility as was pointed out by the amicus in this case the lending facility does not contain terms that are uncommon in commercial lending. And what the credit facility for Great Plains provides the lenders is not day-to-day control over over operations even during that temporary event of default. What it provided the lenders was security for their collateral and and control over the business and security for collateral are two very different things. And in the Williams case before the fourth circuit the court there was looking at a very similar lending facility that also gave the lender actual day-to-day management control and strategic decision making. And the fourth circuit still found that the third breakthrough factor only weighed slightly against immunity. And here we don't have those additional elements of control. You've got the burden of satisfying the breakthrough test. I see you nodding. That's correct. And in terms of factual record will you concede that Great Plains hasn't distributed any profits to the tribe or to Island Mountain thus far? I do not concede that. I believe the record reflects that there have been profits distributed to INDB. Do you have established that in the factual record? Can you cite me where in the factual record that you've shown that Great Plains has distributed profits to the tribe or to Island Mountain? Because you just conceded you got the burden to show it. Yeah I believe that is contained the declaration of Evan Azure that was submitted before the court. If your colleague can look this up and on rebuttal you can give me the citation. Sure happy to your honor. So I do want to talk about the event of default for a moment because that was a deciding factor for the district court. And the district court misunderstood the event of default in some very important ways. First thing it's important to note that the event of default was not in place when Ms. Ransom filed this lawsuit. And it was also not in place when we moved for reconsideration. It was in place at the time the court made the decision. It was your honor but it was not once we moved for reconsideration which is important. It's not in effect but it's still there in the background. It's hanging over their heads. That's that's speculative. The court was required to look at before it could happen again right. And isn't and isn't it true that the change of control or management provision the loan agreement provides that the removal of a single Island Mountain board member can trigger an event of default? That is what the agreement says. I would say it's a pretty easy trigger. It is an easy trigger but I think when you look at the events of uh that surround the original event of default right. I would argue that shows actually evidence of tribal control as opposed to the contrary. That the tribal council can and did change the management of Great Plains despite what the credit facility said and over the objection of the administrative agent. That is evidence of direct tribal control by the tribal council. The other factor about the default that we have to keep in mind is that sovereign immunity is an ongoing inquiry right. That's from the 10th circuit in the Iowa tribe case. And um the Colorado Supreme Court has sort of taken that a step further and said that tribal sovereign immunity is trapped in the present. So the inquiry is now. So when the district court on reconsideration. Pardon me? When is now? Well now would be the facts that are the most current facts before the court on the record. Um courts do split on this and and we we acknowledge this in our briefing. There are some courts that say well we need to sort of look at the record at the time the complaint was filed. Other courts say well it's sort of trapped at the time of the motion to dismiss hearing right. But under sort of under under either formulation the district court got it wrong. The district court relied on a post suit event of default to limit Great Plains immunity and then refused to consider the post suit waiver of that event of default to support immunity. And that's inconsistent and that's erroneous. Okay what you you talked about the district court applied the test improperly applied the factors improperly and you mentioned a couple what general tenor would you say was improper about the way in which the court applied the factors overly restrictive your honor when you look at how what does that mean though well it means when you look at the fourth circuit and and and the seventh circuit and the ninth circuit how those courts have have have applied breakthrough um they they are willing to accept for example the stated purpose of the entity and not look any further than that not look to see how the entity fulfills that purpose but rather they just look for the plain language of the purpose as stated in tribal law so the court went beyond far beyond what other courts have done in in applying the breakthrough standards i i see my time is up i want to make sure i answered your question your honor yes we respectfully ask that you reverse the district court and remand for dismissal all right thank you mr smith mr basinski that's good okay thank you good morning uh may it please the court daniel basinski of council with kin law firm representing the employee mrs ransom i want to address first off a question that was asked about gps profits and whether any of them are shared before you get into the the details of the case can can you tell us uh whether you disagree with anything that was said between your friend and us regarding the relevant standard that were to apply here uh i agree that the burden is on gpf to prove that it is an arm of the tribe um i think that while the breakthrough factors provide a good skeleton for reviewing whether an entity should be considered an arm of the tribe um i agree with your honor that there are factors that should be considered more important than others in the test um i think there are the first factor the control or the creation factor the intent factor um even the state of purpose factor i think those put form over function obviously they're relevant to the analysis but to have three of those factors relate to paperwork more or less i think so they're manip one two and four manipulable three and five are kind of functionally what are driving the train here i agree with that and i think three and five really go to the underlying purpose behind tribal immunity which is uh we don't want to invade the sovereignty of the nation cultural autonomy um the the purpose behind uh commercial dealings between non-native americans and native americans and i think that those three essentially saying control and financial relationships are the i think they need to be the predominant factors in the analysis because they are not as easy to manipulate as some of the others competent council will be able to create an articles of organization that is create that creates the entity under tribal law has the correct stated purpose has the intent to share tribal immunity and if that's half the factors some courts are going to look at that especially if they only adopt the first five factors of the breakthrough test and say not just be counting up the number of factors exactly um how about focusing in on tribal control seems to me looking at the structure that the tribe has very tight control over this operation even though they may not be getting profits distributed to them on an annual basis yes so i would disagree with that position your honor um the what they have is they've created this entity and they have created some guidelines on how tribal lending is supposed to be handled but if you look at the history of gpf it's been managed primarily by non-tribal entities and the only time period of time where it was managed by imdg was a five or six year period where the tribe didn't have access to financial records apparently didn't know about third-party lending agreements such as the newport funding agreement with with gpf and it was a period of that let me and these are the tribe's own statements um was a period of time of unexplained debts and evidence of potential serious internal financial improprietaries or improprieties um this is very similar though less egregious than the fact pattern the california supreme court took a look at in people versus miami nation where there was a five-year period of time there that the tribe had internal disputes over control of the lending agency and the court said that's sufficient on its own to find that there is an adequate control over this agency here the gpf was initially managed by data management for a period of five years then it was run by this their imdg where again there wasn't openness to the exactly what's happening with the entity they went in and swept those people out they went in and swept those doesn't that show control uh well there's been a little bit of mismanagement but it seems to me it shows control and then that leads to the next part which is that the lender then issues a notice of default and takes control over the entity for a year your your opposition mr smith said if you look at that you have to look at the fact that it was waived you can't have it both ways you can't look at one and not the other i i agree that that's relevant to to the analysis but i think the fact that a third-party entity came in and took control over the entity for a period of a year weighs heavily against tribal control over the entity and i think that again the timing of the waiver the court should look at that skeptically because it came days after the uh district court ruled that there wasn't any tribal immunity for gpf well it's clearly strategic but it doesn't mean that it's ineffective true what is it isn't your better argument that it's evanescent and they could they could pull the rug out tomorrow yes and that's what the district court pointed out is that there's nothing in the waiver that prevents them from again going in and submitting a notice of default once the case is ended that prevents them from doing a notice of default again in the future so the waiver of default again i think the courts look at it skeptically and as a tactic in this case more so than any sort of significant shift in the relationship between newport funding the tribe and gpf um on the issue of profits if they hadn't declared a an event of default you concede that the tribe would be entitled to immunity no because not because again the history there uh previous management by a non-tribal entity um mismanagement by imdg which prevented the tribe from having oversight over the financial handlings of gpf and the fact that newport funding through its lending agreement has so much control over both the tribe's ability to so your argument is once newport funding got them to sign this financing agreement that that was the end of tribal immunity i think that that's evidence that this the tribe has not had significant control over gpf for this court to find well when you said they hadn't had significant control you were talking about mismanagement and as judge fisher pointed out mismanagement isn't the same thing as lack of control it's in fact if if somebody's mismanaging an organization by definition they're controlling it that's why you're blaming them for mismanagement so are you equating mismanagement with absence of control hey i'll let me cite the supreme court the california supreme court case about miami um about the miami lending agency they talked about passive control that passive control is insufficient for um to find that that element satisfies the breakthrough test and that's what i think it yes there was mismanagement but the mismanagement i don't think is determinative in one way or the another it's the fact that this mismanagement was allowed to take place in the first place and that's because the tribe did not have access to the full financial records did not have access to third-party lending agreements and apparently there was some sort of internal financial they have it now they they have it now subject to the lending agreement thanks back to my question to mr smith when is now now what period of time do we look at i well clearly at the time that the motion to dismiss is is resolved by the district court all right but now we're before the court of appeals well and the only reason that that evidence came in is based on a motion to reconsider so i think this court did come in through the motion to reconsider right okay and so i think the district court still had jurisdiction yeah correct and so i think that plays into it and at some point clearly there has to be an end to this analysis otherwise whatever change happens to this management structure like you're playing whack-a-mole right exactly and and plus it puts the plaintiff in a disadvantage because uh tribal immunity it provides the plaintiff with an opportunity to conduct discovery which we were able to do and that's why we have this full record before the court um you know if they bring up on a motion to reconsider we asked for discovery on on you know we're we have our hands tied behind our back because we don't know exactly what happened with the waiver who signed well we know who signed the waiver now but we don't know what happened in the interim between the motion to dismiss and the signing of the waiver could i ask you about the the purpose uh you know how much weight do we put on there we'll see whether they've ever ever paid any money over you can tell me your understanding of the record on that point i've asked for the citations on rebuttal but in the meantime how can we tell if an entity was never meant to benefit a tribe or just hasn't turned a profit it is a tricky question um i in this case however is not as it's fairly simple the corporate representative for gpf said that it was structured to provide revenue for the non-tribal manager and the non-tribal servicer with no need for great planes to retain profitability that's their point is those things come off the top i i agree yes um and they will argue that well that was the original arrangement and that since then it's changed but if you look at their arrangements with newport funding and with carmel solutions it's the same deal there's no need for gpf to retain profitability all the revenues are siphoned into non-tribal entities and um and that's why the record has no evidence that gpf has ever created profit ever shared any of its money with the tribe i don't know if there's anything in the record on this probably not but i'm curious why if this is so disadvantageous to a tribe a tribe would ever do it uh there has to be something in it for the tribe even even if you're correct that the structure of the arrangement between newport and the tribal entities um is ineffective to maintain tribal immunity what's in it for the tribe there's got to be some reason why they would engage in this arrangement so generally with the rent-a-tribe scheme um the way it works is there is some sort of pittance paid to the tribe um again there is no evidence that that even that pittance was paid to imdg or the tribe in this case but that's usually the the way that it's structured well who would do all this work for pittance i mean well the elephant in the room is sort of an implicit uh accusation of bribery or corruption i mean that i mean somebody's making money somewhere to do this right and i mean is that is that your theory of the case not necessarily bribery i i think that's a harsh accusation to make um what we have here is the contractual relationships between the parties and lack of who's getting paid and why i guess your answer is you don't know we don't know okay what the benefit is that the tribe well the benefit to the tribe even if assume assume in the history of this that there has not really been any cash turned back to the tribe uh the declarations show that there have been members of the tribe who have been employed by by gpf uh so the record data benefit sorry your honor uh the record shows that gpf has never had any employees um what was submitted by gpf is that sometimes they lease employees from my tribe from imdg but are those tribal tribal members the record says uh they are tribal members yes but the court pointed out that the affidavit which is again bare bones and um self-serving doesn't identify how many employees when these employees were leased um whether they are non-tribal members or tribal members and again i think there's an issue with the term leasing employees to gpf because first off it's not entirely clear what employees gpf would even need gpf has a servicer that takes care of the loans it's an online payday loan business so it's not like it has any sort of physical location that needs to be manned and again lease suggests that there is money being transferred from gpf to imdg and there is no record of any money being transferred from gpf to imdg or gpf to the tribe it says 243 are enrolled tribal members of imdg and imdg is a separate business right but uh they exist to oversee these private entities yes and there are and that's where i think there is confusion here with the way that the affidavit's been structured there's imdg there is then for the tribal lending business gva which is a holding company right and then there are several tribal lending agents or entities one of which is gpf right and so when they say lease employees to the tribal lending entities it's not entirely clear does that include gpf again when they say that we derive most of our profits from tribal lending does that include gpf because there are no records to show that it does specifically they seem to be intentionally vague about that the use of the phrase tribal entities is capacious and doesn't tell us anything at all about gpf per se that's correct and in the cases that we cited especially in situations where the contracts kind of dispute the statements made in the affidavit courts have required more specificity as to you know financial benefits employment benefits things of those nature i see my time is up all right thank you very much mr basinski we'll hear rebuttal from mr smith thank you very much your honor mr smith there seems to be a lot of uncertainty here as to the record you know not every not every immunity arguments decided at the motion to dismiss stage we have qualified immunity questions that are raised summary judgment uh you know do we have enough on the record to make a decision you you do have enough on the record your honor and so let me respond to the to your inquiry judge judge beavis so there's a couple of places in the record that i would that would point you to um i was correct it was the declaration of evan azure so in the um in in the record before this court it would be uh page a94 j a894 yes um and paragraph 16 of mr azure's declaration i will concede does not say the amount of profits but does say quote since 2017 all of gpf's cash profitability has gone to imdg no other third party receives any profit share or transaction based compensation from gpf it doesn't tell me that there's a non-zero amount there it just says no one else is getting it that that's correct it does not tell you that that there is not a non-zero amount but again as i as i indicated other courts reviewing this looking at that profitability question have not found that profitability weighs on sovereign immunity there's not a sliding scale of immunity based on whether a business is profitable or not i would also like to point the court to two other places in the record um a a91 the same declaration from mr azure states that online consumer lending generates 90 percent of imdg's revenue uh and he further indicates that without that revenue the revenue that imdg distributes to the tribe would decline drastically i would also point your honors g is lawyer acronym for island mountain correct that is that is you are invited to speak english in this court uh yes imdg is island mountain development group it is a it is a tribally owned entity that manages the lending facilities i i apologize um and then one other place in the record i would point your honor to would be a 163 which is the declaration from the tribe's president mr mr stiff arm who at paragraph eight indicates that uh the revenues from island mountain development group are the largest source of non-federal funding typically accounting for approximately 75 percent of the total non-federal budget i i want to want to talk about a couple of other things that my uh that my colleague raised first the leasing of employees there is evidence in the record that those employees are leased solely from island mountain development group so great plains is fulfilling its purpose by paying money to island mountain to lease those employees a percentage of which are tribal members all right so that's a benefit as a jobs program even if there's no profits from the entity absolutely your honor that is at least people are getting employment which is a critical issue on a rural reservation i guess goes back to my simple question that you gave a one-word answer to and moved on which is okay but uh is there enough in the record i mean i am you know island mountain development uh you know is one entity we're talking about great plains finance is another entity and when i look at this record and you know the best the declarations are perhaps some of the best records that we have here it seems to me there's a lot of unclarity as to uh you know what goes on in between you talk about the employees if i am uh dg but there's nothing in here it shows how many of them work for gpf unless i'm missing that no that you you are you are correct your honor that that is not in the record but i but i stand by my my prior answer that that there is enough in the record to find that the the way great plains is is is managed and the benefits that it does provide to island mountain development group support the the second breakthrough and the fifth breakthrough factor i see my time is up thank you very much your honors thank you the court will take the case under advisement